UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARK SASSAK, Jr.,<br><br>Defendant. | Criminal No.  1:21 CR 13<br><br>Judge Kleeh<br><br>PRE-TRIAL MEMORANDUM AS TO "PRODUCED USING MATERIALS" |

Now comes the United States of America and William J. Ihlenfeld, II, United States Attorney for the Northern District of West Virginia, by Jennifer T. Conklin and David J. Perri, Assistant United States Attorneys, and respectfully submits this Pre-Trial Memorandum as to the "produced using materials" prong of the jurisdictional requirement of Possession of Child Pornography. [18 U.S.C. § 2252A(a)(5)(B)].

**QUESTION PRESENTED:** *What does it mean to say that an image was "produced using materials," and how may it be shown that such materials traveled in interstate or foreign commerce?*

### MEMORANDUM

FACTUAL BACKGROUND

The forensic investigation in this case has revealed that the defendant had multiple videos of child pornography stored on his Samsung Galaxy S9 smartphone. It appears further that he was conversing with the U/C victim using that phone and arranging to meet her in West Virginia

for sex. On a smartphone, which is a kind of computer, electronic files are stored. The smartphone bears trade inscriptions indicating its make, origin, and/or place of manufacture.

## LEGAL ANALYSIS

1) *What does it mean to say that the images were "produced" using materials?*

The Child Pornography statute provides several means by which an interstate nexus may be shown. One of these is by proof that a "computer disk, or any other material that contains an image of child pornography . . . that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer." 18 U.S.C. § 2252A(a)(5)(B). If the images in question were stored on, copied to, or downloaded to an item of material (e.g., a hard drive, smart phone, thumb drive, CD/DVD), they were "produced" using that item of material. This interpretation of the word reflects the technological reality that the storage of a new image necessarily involves the creation of another copy of that image on the hard drive or other electronic storage medium. The case law is abundant and clear on this point, both in the Possession of Child Pornography and Production of Child Pornography contexts. See *United States v. Schene*, 543 F.3d 627, 639 (10th Cir. 2008) ("each 'image of child pornography' had been copied or downloaded to Schene's hard drive in one capacity or another, and was therefore 'produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce'" within the meaning of 18 U.S.C. § 2252A(a)(5)(B)); *United States v. Ramos*, 685 F.3d 120, 133 (2d Cir. 2012)(discussing foreign-

made laptop and hard drive)(agreeing with *Schene* and similar cases, and holding that where defendant created morphed child pornography in his home, with no evidence the images ever traveled, or were meant to be distributed, in interstate commerce, interstate nexus was nevertheless satisfied as "that the act of using computer equipment manufactured outside the United States to produce child pornography meets the jurisdictional requirement of § 2252A(a)(5)(B)."); *United States v. Skvarla*, 2012 WL 3292881 (W.D.N.Y. Aug. 10, 2012)(following other circuits, the Court concluded that "the act of downloading or copying images of child pornography onto a computer hard drive or other electronic storage medium is 'production' for purposes of § 2252A(a)(5)(B)."); *United States v. Burdulis*, 753 F.3d 255, 263-264 (1st Cir. 2014)("When a person loads an image onto a thumb drive from the internet or another source, that person has created a new copy of the image in the digital memory of the thumb drive," thus producing another image); *United States v. Guagliardo*, 278 F.3d 868 (9th Cir. 2002) (upholding conviction where jurisdiction was premised on the defendant having copied child pornography onto computer disks that had been made overseas, holding that the defendant "'produced' images of child pornography with materials from foreign commerce when he copied the images onto the disks"); *United States v. Poulin*, 631 F.3d 17, 22-23 (1st Cir. 2011) (foreign-made cameras and DVDs); *United States v. Fox*, 357 F. App'x 64, 66 (9th Cir. 2009) (foreign-made cameras); see also, *United States v. Foley*, 740 F.3d 1079, 1082-85 (7th Cir. 2014)(discussing foreign-made hard drives)(noting that the commerce elements of 18 U.S.C. §§ 2251(a), 2252(a)(4)(B), and 2252A(a)(5)(B) are "nearly identical" and without "any meaningful distinction"); *United States v. Lively,* 852 F.3d 549, 852 F.3d 549, 560, (6th Cir. 2017)("Nearly every other circuit to consider this question agrees that an individual produces child

3

pornography when he copies visual depictions of child pornography onto a hard drive.")(concluding that Government satisfied § 2251(a)'s interstate commerce requirement because the SanDisk memory card bore a "Made in China" trade inscription); *United States v. Maxwell,* 446 F.3d 1210, 1211-12, 1219 (11th Cir. 2006); *United States v. Penton,* 380 F. App'x 818, 820-21 (11th Cir. 2010); *United States v. Smith,* 459 F.3d 1276, 1289 (11th Cir. 2006); *United States v. Pattee*, 820 F.3d 496, 511 (2d Cir.), cert. denied __ U.S. __, 137 S. Ct. 222 (2016) ("We agree with our sister circuits … that Congress did not limit the 'production' of child pornography as prohibited by § 2251(a) to the moment of recording, and that 'production' can encompass embodying the images or video in digital media, such as a hard drive or disk."); *United States v. Mugan,* 441 F.3d 622 (8th Cir.), *cert. denied,* 549 U.S. 890 (2006); *United States v. Anderson*, 280 F.3d 1121, 1125 (7th Cir. 2002)("[C]omputerized images are produced when computer equipment is used to copy or download the images."); *United States v. Angle*, 234 F.3d 326, 341 (7th Cir.2000) (holding that visual depictions "are 'produced' when computer equipment, including computer diskettes, are used to copy the depictions onto the diskettes"), *cert. denied*, 533 U.S. 932, 121 S.Ct. 2556, 150 L.Ed.2d 722 (2001).

2) *How may it be shown that these materials traveled in interstate or foreign commerce?*

To establish that the material used to produce the images (e.g., the computer hard drive, smart phone, thumb drive, or CD/DVD) traveled in interstate or foreign commerce, the United States shows that it was manufactured outside the State of West Virginia. This is typically accomplished through agent testimony about a place-of-origin inscription or label found on the electronic device.

F.R.E. 902 provides that the following are self-authenticating:

(7) Trade inscriptions and the like. Inscriptions, signs, tags, or labels purporting to have been affixed in the course of business and indicating ownership, control, or origin.

This exception to F..R.E. 901 has been recognized and applied to the following items: **electronic devices**, see *United States v. Saguil*, 600 F. App'x 945, 947 (5th Cir. 2015) ("Made in Japan" inscription on a video camera); *United States v. Burdulis*, 753 F.3d 255, 263 (1st Cir. 2014) ("Made in China" inscription on a thumb drive); *United States v. Wilkinson*, No. 1:14-CR-168-BLW-1, 2015 WL 6182466, at *13-14 (D. Idaho Oct. 21, 2015) ("Made in Philippines," "Assembled in China," and "Product of China" inscriptions on various electronic devices); *Scott*, 2014 WL 2808802, at *3 (country-of-origin inscriptions on cell phones and a memory card); *United States v. Brown*, 2009 WL 2090193 at *10-11 (S.D. Ind. July 13, 2009), ("Product of Malaysia" inscription on a hard drive); *ACCO Brands, Inc. v. PC Guardian Anti-Theft Prods.*, 592 F. Supp. 2d 1208, 1219 (N.D. Cal. 2008) (holding label on computers was self-authenticating under Fed. R. Evid. 902(7) because label was inscribed with manufacturer's trade name for that make of computer); **documents**, see *Alexander v. CareSource*, 576 F.3d 551, 561 (6th Cir. 2009) (holding that a document marked with a trade inscription indicating the source of origin of the document was self-authenticated under 902(7)); **business letters and emails**, see *Lorraine v. Markel Am. Ins. Co.,* 21 F.R.D. 534, 551-52 (D. Md. 2007) (holding that business emails containing identifying marks of company are self-authenticated), *Olson v. J.J. Marshall & Assoc.*, 2009 WL 3347420, 4 (E.D. Ky. 2009) (unreported) (holding letters containing business's letterhead were self-authenticating), and *Reitz v. City of Mt. Juliet*, 2009 WL 5170200, 5 (M.D. Tenn. 2009) (holding letters written on company's letterhead

5

were self-authenticating); **firearms**, see *United States v. Alvarez*, 972 F.2d 1000, 1004 (9th Cir. 1992) (holding a manufacturer's inscription on a firearm was not subject to the hearsay rule and properly admitted as evidence that it had been manufactured in Spain); **markings on the opening frames of a news broadcast**, see *L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 936 (9th Cir. 2002) (holding that identifying slate that appeared on opening frames of videotape of news footage was self-authenticating under 902(7)); **tapes**, see *Fenton v. Sterling Plumbing Grp. Inc.*, 21 F.3d 1113, 3 (9th Cir. 1994) (holding tapes that carry company's logo were self-authenticating); **sporting goods**, see *Warrior Lacrosse, Inc. v. STX, L.L.C.*, 2006 WL 1420826, 4 (E.D. Mich. 2006) (unreported) (holding inscriptions on sporting goods was self-authenticating).

Nor is the introduction of trade inscriptions limited by the hearsay rule. Since the trade label is part a of the item of physical evidence, generated and applied as part of the manufacturing process, it is not a "statement" within the meaning of F.R.E. 801. Numerous courts have held accordingly. See *United States v. Koch*, 625 F.3d 470, 480 (8th Cir. 2010) (affirming admission of agent's testimony that the defendant's computer and flash drive were "labeled as having been manufactured in China," because the court had "rejected [in *United States v. Bowling*, 32 F.3d 326 (8th Cir. 1994)] the claim that a manufacturer's inscription on a product is inadmissible hearsay"); *United States v. Gutierrez*, 625 F. App'x 888, 895-96 (10th Cir. 2015) (rejecting hearsay challenge to agent's testimony that the cell phones and camera were stamped "made in China," because the court had "held [in *United States v. Thody*, 978 F.2d 625 (10th Cir. 1992)] that a manufacturer's marking is not hearsay"); *Thody*, 978 F.2d at 630-31 (holding, without analysis, that the "Made in

6

Spain" marking on the gun was "technically not an assertion by a declarant as contemplated by [Rule 801]"); .*Alvarez*, 972 F.2d at 1004 ("[T]he evidence consisting of a manufacturer's inscription on a firearm is not an assertion subject to the hearsay rule."); *Brown*, 2009 WL 2090193 at *10-11 (where, in a child pornography possession case, the court admitted a trade inscription on a computer hard drive stating "Product of Malaysia," finding that the trade inscription was self-authenticating, not hearsay, and simply part of the physical evidence in the case); *United States v. Scott*, No. 2:13-cr-164, 2014 WL 2808802 at *4 (E.D. Va. June 20, 2014)("made in China" inscription not hearsay). Several courts have found that, even if the inscription can be considered hearsay, the residual exception in F.R.E. 807 permits its introduction. See *Saguil*, 600 F. App'x. at 947; *Burdulis*, 753 F.3d at 263-264 ("Made in China" inscription on a thumb drive).

The cellular phone seized in this case from Mark Sassak's possession is a Samsung Galaxy SMG960U, phone number 724-396-7487, serial number R38K306WMDA, IMEI 353302090872196. Samsung cell phones are all manufactured in Vietnam, Korea or China. In the model number, the "U" designates the phone to be shipped to the United States for sale/use in the United States. There are no Samsung Galaxy cellphones manufactured in the United States.

WHEREFORE, the United States seeks a pretrial ruling from the Court that pursuant to Fed. R. Evid. 902(7) that the trade inscription of "Samsung," the Model "SMG960U" and any other identifying information on the phone are self-authenticating as to the origin of this item that requires

7

no additional extrinsic evidence of authenticity.

          Respectfully submitted,

          WILLIAM J. IHLENFELD, II
          UNITED STATES ATTORNEY

By:   /s/ Jennifer T. Conklin
       Jennifer T. Conklin
       Assistant United States Attorney
       Florida Bar Number 40876
       Ohio Bar Number 100792
       United States Attorney's Office
       Northern District of West Virginia
       1125 Chapline Street, Suite 3000
       (304) 234-0100
       Jennifer.Conklin@usdoj.gov

By:   /s/ David J. Perri
       David J. Perri
       Assistant United States Attorney
       Bar Number: 9219
       United States Attorney's Office
       1125 Chapline Street, Suite 3000
       Wheeling, West Virginia 26003
       Telephone: (304) 234-0100
       Fax: (304) 234-0111
       E-mail: David.Perri@usdoj.gov

## CERTIFICATE OF SERVICE

I, Jennifer T. Conklin and David J. Perri, Assistant United States Attorneys for the Northern District of West Virginia, hereby certify that the foregoing UNITED STATES' PRE-TRIAL MEMORANDUM AS TO "PRODUCED USING MATERIALS" electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Brendan Leary, Esq.
Federal Public Defender Office
1125 Chapline St., Rm. 208
Wheeling, WV 26003

Elizabeth Gross, Esq.
Federal Public Defender Office
The Huntington Bank Building
230 West Pike Street, Ste. 360
Clarksburg, WV 26302

Dated: November 22, 2021

By: /s/ Jennifer T. Conklin
Jennifer T. Conklin
Assistant United States Attorney
Florida Bar Number 40876
Ohio Bar Number 100792

By: /s/ David J. Perri
David J. Perri
Assistant United States Attorney
Bar Number: 9219