IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

  v.                                            CRIMINAL NO. 1:21-CR-13
                                                                         (KLEEH)

**MARK SASSAK, JR.,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER
## DENYING POST-TRIAL MOTIONS [ECF NO. 84]

Pursuant to Rules 33(a) and 29 of the Federal Rules of Criminal Procedure, Defendant has moved for a new trial and a judgment of acquittal [ECF No. 84]. The Government filed a response in opposition [ECF No. 88]. For the reasons discussed herein, the post-trial motions are **DENIED**.

### I.   BACKGROUND

Following a three-day jury trial, Defendant Mark Sassak, Jr. ("Defendant") was found guilty of Travel to Engage in Sexual Activity with a Minor, in violation of 18 U.S.C. § 2423(b), and Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). On December 9, 2022, prior to the jury's beginning its deliberations and at the close of the Government's case-in-chief, Defendant, by counsel, moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. Defendant filed the pending post-trial

motions on May 13, 2022, and the Government filed its response on July 13, 2022.

## II.  APPLICABLE LAW

Rule 33(a) of the Federal Rules of Criminal Procedure permits the Court to vacate a criminal conviction and "grant a new trial if the interest of justice so requires."  However, "a trial court should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the evidence weighs heavily against it."  United States v. Smith, 451 F.3d 209, 217 (4th Cir. 2006) (citation and quotation marks omitted).

Rule 29 of the Federal Rules of Criminal Procedure provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  A defendant who challenges the sufficiency of the evidence under Rule 29 faces an "imposing burden."  United States v. Martin, 523 F.3d 281, 288 (4th Cir. 2008) (citing United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997)).  He must establish that "the record demonstrates a lack of evidence from which a jury could find guilt beyond a reasonable doubt."  Id. at 277-78 (citing United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)).  When reviewing the

sufficiency of the evidence supporting a criminal conviction, courts are "limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support it." Beidler, 110 F.3d at 1067 (citation and quotation marks omitted).

The court must uphold the jury's verdict if, when viewed in the light most favorable to the government, there is sufficient evidence from which "any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). It is the jury, and not the court, who "weighs the credibility of the evidence and resolves any conflicts in the evidence presented." Beidler, 110 F.3d at 1067 (citation omitted). Reversal of a jury's verdict of guilty is reserved for cases "where the prosecution's failure is clear." Burks v. United States, 437 U.S. 1, 17 (1978).

### III. DISCUSSION

Defendant argues that the Court committed a number of errors in its rulings before and during the trial. The Court will address each in turn.

**1. The Court did not err when it granted the Government's motion in limine regarding Rule 414 and 404(b) evidence.**

Defendant argues that the court erred in granting the Government's motion in limine regarding Rule 414 and 404(b)

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 84]**

evidence [ECF No. 22]. Defendant asserts no new arguments and incorporates the arguments previously made. The Court incorporates its previous findings [ECF No. 41] and finds herein that it committed no error on this issue.

2. **The Court did not err when it denied Defendant's motion in limine to exclude the use of the term "victim" or "child."**

Defendant argues that the Court erred by denying Defendant's motion in limine to exclude the use of the term "victim" or "child" [ECF No. 36]. Defendant asserts no new arguments and incorporates the arguments previously made. The Court incorporates its previous findings [ECF No. 42] and finds herein that it committed no error on this issue.

3. **The Court did not err when it denied Defendant's challenges of jurors for cause.**

Defendant argues that the Court erred by failing to strike multiple jurors for cause, forcing Defendant to exercise peremptory strikes to remove the jurors from the panel. Under the Sixth Amendment to the United States Constitution, a criminal defendant has the right to trial by an impartial jury. A juror is presumed impartial, and the existence of a preconception is insufficient to rebut the presumption, if the juror can "lay aside his impression or opinion and render a verdict based on the evidence presented in court." United States v. Jones, 716 F.3d

851, 857 (4th Cir. 2013) (citing Murphy v. Florida, 421 U.S. 794, 800 (1975)).

There is no per se rule excluding jurors because of their associations with law enforcement or investigatory agencies. See United States v. Umana, 750 F.3d 320, 342 (4th Cir. 2014) ("A juror's generally favorable impression of law enforcement does not necessarily amount to bias any more than does a juror's personal association with law enforcement."); United States v. LaRouche, 896 F.2d 815, 830 (4th Cir. 1990) ("[C]ase law . . . refuses to establish a per se rule excluding any person who had an association with an investigatory agency."). Further, a family relation to law enforcement is not a circumstance from which bias may be implied. See United States v. Caldwell, 543 F.2d 1333, 1347 (D.C. Cir. 1974) ("Absent a specific showing of bias, a defendant accused of murdering a police officer is not entitled to a jury free of policemen's relatives."); United States v. Brewer, No. 1:12CR1, 2012 WL 4757894, at *5 (N.D.W. Va. Oct. 5, 2012) ("[T]he mere fact that . . . [the juror] once had a family member in law enforcement is plainly not one of the 'extreme situation[s]' in which bias may be implied.") (citation omitted), aff'd, 533 F. App'x 234 (4th Cir. 2013).

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 84]**

    a.   Mr. McQuillan

Potential juror Jason McQuillan indicated that his brother-in-law was a deputy sheriff who worked on "cases like this" and that his brother-in-law would get emotional about them. The Court asked Mr. McQuillan if he would be able to serve as a fair and impartial juror and render a verdict based solely on the evidence presented and the law as instructed by the Court. Mr. McQuillan said, "I believe I could." Mr. McQuillan indicated that he disclosed the information about his brother-in-law's employment in the interest of full disclosure, not because of any doubts or concerns about his ability to be impartial.

As the Court discussed on the record, Mr. McQuillan stated that he could serve as a fair and impartial juror, rendering a decision based solely on the evidence presented and the law as instructed by the judge. As such, he is presumed impartial. His family member's association with law enforcement does not create a per se finding that he should be stricken for cause. There was no reason to strike Mr. McQuillan for cause, and the Court was not in error on this issue.

    b.   Mr. Ketterman

Potential Juror Ronald Ketterman stated that he was a fingerprint analyst for background checks and criminal matters with the FBI. The Court asked Mr. Ketterman if there was any

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 84]**

reason why he could not serve as a fair and impartial juror in the case, and Mr. Ketterman said, "Not that I can think of." Further, the Court asked him if there was any reason, given his career and the work he has done, that would prompt him to believe or disbelieve law enforcement officers over non-law enforcement officers, and he said, "Not that I know of." The Court asked him if he would be uncomfortable going back to work if he ultimately believed that a not guilty verdict was appropriate, and Mr. Ketterman said, "No."

Again, here, Mr. Ketterman stated that he could serve as a fair and impartial juror. His association with the FBI does not create a *per se* finding that he should be stricken for cause. There was no reason to strike Mr. Ketterman for cause, and the Court was not in error on this issue.

    **c.   Ms. Harris**

Potential juror Cynthia Harris stated that she worked at the FBI center in Bridgeport, West Virginia, in the budget department. She previously worked as an analyst with the FBI and "did things with the Department of Homeland Security" and "[d]id some things with DOD." She then moved to the "next generation identification program office," doing administrative work. The Court asked Ms. Harris if there was anything about her work experience that would affect her ability to serve as a fair and impartial juror, and she

responded, "No, sir." The Court asked her if there was anything about her work experience that would affect her ability to render a verdict based solely upon the evidence presented and the law as instructed by the Court, and she responded, "No, sir. I would have no problem with that."

Again, here, Ms. Harris stated that she could serve as a fair and impartial juror, rendering a decision based solely on the evidence presented and the law as instructed by the judge. As such, she is presumed impartial. Her association with the FBI does not create a per se finding that she should be stricken for cause. There was no reason to strike Ms. Harris for cause, and the Court was not in error on this issue.

4. **The Court did not err when it prohibited Defendant from cross-examining Lt. Weaver as to the substance of Defendant's statement when the statement was offered in the Government's case-in-chief.**

Defendant argues that the Court erred when it denied Defendant's request to cross-examine Lt. Weaver as to the substance of Defendant's interview statement. Defendant argues that his due process rights, Sixth Amendment rights, and right to effective assistance of counsel were violated.

Hearsay is defined as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter

asserted in the statement." Fed. R. Evid. 801(c). Under Rule 801(d)(2) of the Federal Rules of Evidence, "[a]dmissions by a party-opponent are not considered hearsay and therefore can be admitted against that party." United States v. Wilkerson, 84 F.3d 692, 696 (4th Cir. 1996) (citing Fed. R. Evid. 801(d)(2)).

For the Rule 801(d)(2) exception to apply with respect to a defendant's prior statement, the statement must be offered against the defendant; otherwise, it is inadmissible hearsay. See id. at 696 (holding that the trial judge did not abuse his discretion by refusing to allow defense counsel to cross-examine an FBI agent concerning exculpatory statements the defendant made during an interview because the defendant's self-serving statements were hearsay and inadmissible as statements by a party opponent). As the Sixth Circuit found, "[p]recluding a defendant from eliciting inadmissible hearsay statements does not violate the Confrontation Clause." United States v. Ford, 761 F.3d 641, 652 (6th Cir. 2014).

During the trial, the Government questioned Lt. Weaver about portions of an interview statement that Defendant had previously given. On cross examination, Defendant's counsel attempted to elicit testimony regarding other, additional portions of Defendant's statement. The Court found during trial and finds now that this attempt by Defendant's counsel was solicitation of hearsay. Defendant was seeking to introduce exculpatory portions

of his own prior statements. This was an attempt to solicit hearsay because the Defendant sought to introduce the exculpatory statements for the truth of the statements themselves. Because the statements Defendant sought to introduce were not offered against an opposing party, they did not fall into the exception under Rule 801(d)(2).

In addition, Defendant's argument regarding effective assistance of counsel is without merit. It cannot be true that counsel is deprived of effective assistance of counsel merely because an evidentiary objection was sustained. The Court was not in error in ruling on this issue.

5. **The Court did not err when it denied Defendant's motion to exclude Government Exhibit 1 for failing to disclose the basis of expert opinion testimony.**

Defendant argues that the Court erred in denying Defendant's motion to exclude Government Exhibit 1, the Samsung Galaxy S9 Smartphone, for failing to disclose the basis of expert opinion testimony. Defendant argues that some of Lt. Weaver's testimony was expert testimony that was not previously provided to the defense in accordance with Rule 16 of the Federal Rules of Evidence.

Rule 16(G) provides,

> Expert Witnesses. At the defendant's request, the government must give to the defendant a written summary of any testimony that the

> government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. If the government requests discovery under subdivision (b)(1)(C)(ii) and the defendant complies, the government must, at the defendant's request, give to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial on the issue of the defendant's mental condition. The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

In its case-in-chief, the Government called Lt. Weaver as its first witness. Lt. Weaver was qualified as an expert in the area of forensic examination of phone extractions and/or downloads. The Government also called Lt. Weaver as its last witness. In the second round of testimony, Lt. Weaver testified regarding two applications ("apps") on Defendant's phone: a second calculator app and an app called "Security Master." Lt. Weaver testified that the presence of a second calculator app on the phone was, in his experience, suspicious. It can sometimes be used for storage and suggests a desire to prevent others from discovering something on the phone. Lt. Weaver also testified that the Security Master app will alert the phone user when an intruder is trying to access the phone. Lt. Weaver did not opine on whether or how Defendant was using the apps or what exactly the apps may have hidden on the

phone. Defendant did not object during the testimony but later moved to strike it. During trial, the Government indicated that both of the apps appear in the video in Government's Exhibit 4.

The Court previously found and finds herein that Lt. Weaver's testimony regarding the two apps was not expert testimony under Rules 702, 703, or 705 that required disclosure. It was not based upon knowledge acquired through special training or education. See Fed. R. Evid. 701. Lt. Weaver testified, based on his experience, that those apps existed and what they could be used for. At trial, Lt. Weaver testified at length about his extensive experience investigating crimes similar to Defendant's offenses.

Rule 16 also requires the Government to make physical items available for inspection. Defendant's phone was made available to Defendant in plenty of time to prepare for trial. Defendant's expert spent approximately 2.5 days with the phone. Page 2 of Government's Exhibit 2 includes a summary/inventory of the contents of the phone, and it includes reference to 45 different applications that were on the phone. Defendant was on notice that the second calculator app and the Security Master app were on the phone. The Court finds that it was not in error on this issue.

**6. The Court did not err with respect to its jury instructions.**

This Court's duty in instructing jurors is to provide correct statements of the law that avoid confusing or misleading them. See United States v. Savage, 885 F.3d 212, 222–23 (4th Cir. 2018) ("[T]aken as a whole, the instruction [must] fairly state[] the controlling law."); United States v. Miltier, 882 F.3d 81, 89 (4th Cir. 2018) ("[T]he instructions construed as a whole, and in light of the whole record, [must] adequately inform[] the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the opposing party."). A district court's refusal to provide an instruction requested by a defendant constitutes reversible error only if the instruction "(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." United States v. Lewis, 53 F.3d 29, 32 (4th Cir. 1995) (citations omitted). The Court's jury instructions met these standards.

**a. Refusing Defendant's Instruction No. 25 ("Entrapment")**

Defendant argues that the Court erred by refusing to give Defendant's Instruction No. 25 regarding "Entrapment":

> The Court instructs the jury that entrapment is a complete defense to a criminal charge. The government may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the government may prosecute. When reviewing the facts regarding entrapment, you must find the government induced the crime and that Mr. Sassak lacked the predisposition to engage in the criminal conduct. If you find that Mr. Sassak was predisposed to try and have sex with a minor, then entrapment does not exist. But if you find he was not so predisposed, and the government agent induced him to commit the crime, or attempt to commit the crime, then you may find that Mr. Sassak was entrapped and find him not guilty of the charge.

Def. Proposed Jury Instructions, ECF No. 23, at 26.

In order to give an entrapment instruction, there must be evidence in the record that the Government "induced [the defendant] to commit an offense he was not otherwise predisposed to commit." United States v. Osborne, 935 F.2d 32, 38 (4th Cir. 1991) (citation omitted). Mere solicitation by law enforcement does not amount to inducement and "does not entitle a defendant to an instruction on entrapment." United States v. Hsu, 364 F.3d 192, 201 (4th Cir. 2004). To show inducement, a defendant must show "government overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party." Id. at 198. Predisposition "focuses upon whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 84]**

availed himself of the opportunity to perpetrate the crime." Mathews v. United States, 485 U.S. 58, 63 (1988) (citation omitted). Finally, there is nothing overreaching or otherwise improper about online undercover investigations in and of themselves. See United States v. Fernando, 291 F. App'x 494, 495-96 (4th Cir. 2008) (unpublished) (holding that the entrapment defense was not warranted where the defendant was chatting online with an undercover officer posing as a fourteen-year-old girl).

Here, it was Defendant who reached out to Lt. Weaver's online juvenile persona, Ally. It was Defendant who began communicating, and continued to communicate, in a sexual way with her, despite knowing and being reminded that she was underaged. Defendant arranged to meet "Ally" for sex in her hometown. Defendant traveled to West Virginia for the purpose of engaging in sexual activity with her. For all of these reasons, the Court maintains its position that an entrapment instruction would have been incorrect. Defendant did not meet his burden in showing that the Government induced him to commit a crime that he was not otherwise predisposed to commit, and the Court was not in error with respect to its ruling.

### b. Instructing the jury that the crime could be completed if there was "an attempt to engage in such act"

Defendant argues that the Court erred when it instructed the jury that the crime alleged in Count One could be completed if there was an "attempt to engage in such act," when this language was not included in the Indictment. Defendant argues that this was an impermissible variance from the Indictment.

Count One of the Indictment, which charged Defendant with Travel to Engage in Sexual Activity with a Minor, alleges,

> On or about October 28, 2020, in Harrison County, West Virginia, within the Northern District of West Virginia and elsewhere, defendant, MARK SASSAK, Jr., did knowingly travel in interstate commerce with a motivating purpose of engaging in any illicit sexual conduct with another person, which is to say that he did travel from the State of Pennsylvania to the State of West Virginia with a motivating purpose of engaging in a sexual act with a 15 year-old girl that would be in violation of Chapter 109A of the United States Code if it occurred in the special maritime and territory jurisdiction of the United States, all in violation of Title 18, United States Code, Section 2423(b).

The Court instructed the jury as follows:

> For the purposes of the Indictment, "illicit sexual conduct" means a sexual act with a person under 18 years of age that would be in violation of Chapter 109A of the United States Code.
>
> With respect to the charge contained in Count One of the Indictment, I instruct you that it is a violation of Federal criminal law, and

> specifically, Chapter 109A, to knowingly engage in a sexual act, or to attempt to engage in such an act, with a minor who has attained the age of twelve years, but has not attained the age of sixteen years, and who is at least four years younger than the defendant.

Jury Instructions, ECF No. 57, at 14.

Defendant was charged with Travel to Engage in Sexual Activity with a Minor. The elements of this offense include, first, that the defendant traveled in interstate commerce, and second, that a motivating purpose of the defendant's travel was to engage in "illicit sexual conduct" with a person he believed to be a minor. The jury instruction with which Defendant takes issue merely defines what constitutes "illicit sexual conduct." Under the applicable definition, Defendant would be guilty of Travel to Engage in Sexual Activity with a Minor if he traveled in interstate commerce and his motivating purpose was "to knowingly engage in a sexual act, or to attempt to engage in such an act, with a minor . . . ." The Court's instruction does not constitute a variance from the Indictment. It merely defines a term included in the Indictment. The Court's ruling was not in error.

### c. Stock CSI Instruction

Defendant argues that the Court erred by providing the following "Stock CSI Instruction":

> Some of you may have seen popular television shows such as CSI or Law & Order. It is not

> necessary that law enforcement utilize any or all of these techniques. Witness testimony, if believed by you, is sufficient to establish the elements of the crimes charged in this case. Specific investigative techniques, such as DNA and fingerprints, are not required to be presented in order for you to find the defendant guilty of the charges in this case. In short, law enforcement or investigative techniques are simply not your concern. Rather, your concern is whether the evidence that was admitted proved the defendant's guilt beyond a reasonable doubt.

Defendant argues that the instruction "invades the province of the jury to deliberate based upon their experience and common knowledge."

As the Government points out, courts have generally permitted jury instructions stating that the United States need not use any particular law enforcement technique(s). See, e.g., United States v. Mason, 954 F.2d 219, 222 (4th Cir. 1992); United States v. Holloway, 774 F. App'x 147, 148 (4th Cir. 2019) (unpublished). The instruction was a correct statement of the law and was not confusing or misleading. The Court's instruction was not in error.

7. **There were no errors that cumulated and denied Defendant a fair trial.**

Defendant argues that the cumulative effect of the Court's errors contributed to Defendant's convictions on counts for which there was insufficient evidence and denied Defendant a fair trial.

**MEMORANDUM OPINION AND ORDER**
**DENYING POST-TRIAL MOTIONS [ECF NO. 84]**

In the Court's view, Defendant has not shown that the Court made any errors. Therefore, there was no cumulative impact of errors.

**8.  The Court did not err when it denied Defendant's Rule 29 motion for judgment of acquittal.**

Defendant argues that the Court erred when it denied his Rule 29 motion for judgment of acquittal at the close of the Government's case-in-chief. To the contrary, it is clear that the Government presented sufficient evidence to sustain the jury's conviction. The Court incorporates its previous findings on the issue and finds that its ruling was not in error.

## IV.  CONCLUSION

For the reasons discussed above, Defendant's post-trial motions are **DENIED** [ECF No. 84].

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record and all appropriate agencies.

DATED: November 28, 2022

*Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA